**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| KURT KIDD, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> REGENCY AT DOMINION VALLEY ) <br> OWNERS ASSOCIATION, INC., and ) <br> ASSOCIA COMMUNITY ) <br> MANAGEMENT CORPORATION, ) <br> ) <br> ) <br> Defendants. ) <br> ) | Civil Action No.: 25-599 <br><br> **COMPLAINT** <br><br> **JURY DEMAND** |

**COMPLAINT**

**COMES NOW** Plaintiff Kurt Kidd, by and through undersigned counsel, and states and avers as follows:

**INTRODUCTION**

1. This case seeks to vindicate Mr. Kidd's right as a member of the Regency at Dominion Valley Owners Association ("Regency" or "HOA") to practice his religion in common areas made available by Regency's Board of Directors ("Board") to other HOA members, clubs, and outside members of the public. Regency violated Mr. Kidd's rights guaranteed by the federal Fair Housing Act ("FHA") and Virginia Fair Housing Law ("VFHL") by (1) discriminating against him in the terms, conditions, privileges, and/or provision of services because of his religion and (2) interfering with Mr. Kidd's right to enjoy the privileges of housing free from discrimination.

2. Congress enacted the FHA with a broad mandate to eradicate discrimination in the provision of housing. Accordingly, the broad language chosen by Congress has been interpreted

by many courts to prohibit discrimination before *and* after the sale or rental of a home – including governance by homeowners and condo associations.

## PARTIES

3.     Plaintiff Kurt Kidd and his wife moved to Regency in 2016, and his home is located at 5217 Addlerfield Way, Haymarket, VA 20169.

4.     Defendant Regency at Dominion Valley Owners Association is located at 15351 Championship Drive, Haymarket, VA 20169, and incorporated under the Virginia Non-Stock Corporation Act.

5.     Defendant Associa Community Management Corporation ("CMC") is located at 4800 Westfields Boulevard, Suite 300, Chantilly, VA 20151. CMC has onsite offices within Regency at 15351 Championship Drive, Haymarket, VA, 20169.

## JURISDICTION AND VENUE

6.     This action raises federal questions under the FHA, 42 U.S.C. §§ 3604 and 3617.

7.     Jurisdiction is conferred on this Court by 28 U.S.C. § 1331 and a cause of action created by 42 U.S.C. § 3613.

8.     This Court is authorized to award the requested declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202; the requested injunctive relief pursuant to 28 U.S.C. § 1343 and Federal Rules of Civil Procedure Rule 65; and costs and attorneys' fees under 42 U.S.C. § 3613(c)(2).

9.     Venue is proper in the United States District Court for the Eastern District of Virginia pursuant to 28 U.S.C. § 1391(b), because Defendants reside in this district and/or all the acts described in this Complaint occurred in this district.

10.    This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a) as they arise under the same common nucleus of operative fact.

## FACTUAL ALLEGATIONS

### I. Background

11. Kurt Kidd is a homeowner and member of Regency. Mr. Kidd and his wife moved to Regency in 2016. Mr. Kidd is a Christian and actively participates in faith-based activities with fellow Christians in the Regency community.

12. Regency is an owners association in Haymarket, Virginia intended primarily for individuals 55 years of age and older. *See* Declaration, Article 8 § 8.2(x) ("At least 80% of the Lots shall be occupied by at least one person 55 years of age or older.") (Attached hereto as Exhibit 1).

13. Upon information and belief, Regency is managed by Associa Community Management Corporation ("CMC"). *See* Bylaws, Article 5 §§ 5.2 and 5.3 (Attached hereto as Exhibit 2). Upon information and belief, Vincent Greco is the General Manager of Regency and employed by CMC. *See* https://www.regencydvonline.com/Contact_Us.

14. Prior to forming an official Regency club, Mr. Kidd participated in a Tuesday Men's Bible study, which at one time included a prior Board president. Although the group originally met in a Regency home, the group sought a larger space for its growing number of resident participants.

15. In or around 2018, the Tuesday Men's Bible study expanded and formed the Christian Men's Club.

16. Two years later, the club expanded to what is now called the Regency Christian Fellowship ("RCF").

17. Mr. Kidd and members of RCF practice their religion through various faith-based events, including but not limited to: (1) a weekly Men's Bible Study in the Madison Room; (2) a weekly Women's Bible Study in the Greenbriar room; (3) "The Story," where residents meet on the first and third Friday of every month and study a book of the same name by the author, Randy

Frazee; and (4) "Movie Night," which includes the viewing of a faith-based movie in the front ballroom of the clubhouse in March, June, September, and December. Mr. Kidd has been consistently the point of contact for these events. Mr. Kidd leads and actively participates in the Men's Bible Study and Movie Night.

18. Notwithstanding RCF's name, the club's activities are free of charge and open to *all* residents of any denomination or religion. Once events begin, our client and other residents close the doors to meet privately in the sanctity of their reserved space.

## II.   Resident Clubs at Regency

19. Forming and participating in clubs and group activities with fellow neighbors is one of the many privileges afforded Regency residents when they purchase a home within the HOA. Regency Clubhouse Manual at page 6 (attached hereto as Exhibit 3).

20. Regency's Clubhouse manual, amended in November 2024, defines a club as "a social group with a common interest that is organized and managed by Regency Members. The organization and management of a Club is independent and separate from the [Owners Association]."

21. According to the club formation form (attached hereto as Exhibit 4), there are three requirements to form a Regency club. First, clubs can only be formed by Regency residents. Second, the resident must fill out and submit the form to the Activities and Communications Manager. Lastly, Regency allows for the formation of all clubs except (1) political clubs and (2) clubs that operate a business.

22. Once established as a formal club, a club can announce clubhouse meetings in *The Regency Times,* write articles in the *Regency Review*, and list the club on the Regency website.

4

23. As described on Regency's website under the "amenities" tab, Regency offers over 30 clubs and groups "organized by and for Regency residents." *See* https://www.regencydvonline.com/Amenities/Clubs_Groups. As this link provides, clubs include but are not limited to (1) an education group where residents can learn about diverse topics; (2) several book groups; (3) a flag club which is made up of "veterans, retired law enforcement officers, and firefighters who organize memorials and gatherings on patriotic holidays." *Id.*

24. Upon information and belief, Regency permits its common areas for celebrations of life, memorial services, weddings, and various other events/banquets.

### III. Access to Regency's Common Areas and Clubhouse

25. Pursuant to Regency's governing documents, "common area" is defined as "all of the Property, other than Lots, then owned by the Association for the benefit, use and enjoyment of the Owners." Declaration, Article I § 1.1(11). Access to common areas is granted by Regency's declaration. Owners are granted a "nonexclusive right and easement of use and enjoyment in common with others" to common areas. Easements granted in the Declaration or any supplementary declaration "shall not terminate or merge and shall continue to run with the land." *Id.* at § 1.2(e). At the same time, Regency's Board can "regulate the use of the Common Area." Declaration, Article 3 § 3.8(c). Pursuant to this regulatory power, the Board has the power to "adopt, amend, and repeal" various rules and regulations to regulate the use and enjoyment of the common area. Declaration, Article 8 § 8.3(a).

26. The Board's "power" to create rules is not unlimited. As the Declaration further provides, "[t]he Rules and Regulations shall not unreasonably interfere with the use and enjoyment of the Lots or Common Area." *Id.* at § 8.3(c).

27. Changes to the rules and regulations by the Board, "shall be published prior to the time when the same shall become effective and copies thereof shall be provided to each Owner and to each occupant requesting the same." *Id.* at § 8.3(b).

28. As advertised on Regency's website, "[t]he focus of our award winning community, located in the heart of Prince William County, is our magnificent 30,000 square foot clubhouse with plentiful amenities and recreational opportunities."

29. According to its Facebook page, Regency markets itself as "the premier wedding venue across the region."

30. Residents and members of the public are permitted to use up to eleven facilities inside the clubhouse and around the community. These include: "ballrooms, Madison room, amphitheater, and the Middleburg Grill and Potomac Room."

31. As the Clubhouse Manual states, "Regency Members and Clubs may reserve the clubhouse facilities for their Club meetings and other events designed for their members and invited guests." Study groups are also permitted under the sponsorship of a club.

32. The Clubhouse manual also goes on to explain that the Board maintains a "right" to prohibit events that would "disturb the peace or result in substantially divisive or incendiary reactions among membership." Upon information and belief, this language was passed in November 2024 after a "Women for Harris" group attempted to reserve a room for a meeting.

33. For recurring and one-time events, clubs and residents must complete a Clubhouse Room and Campus Reservation Request Form (Attached hereto as Exhibit 5).

34. Although Mr. Kidd does not participate in every RCF event, Mr. Kidd completes the reservation forms for most, if not all, RCF events. For example, Mr. Kidd has submitted

reservation forms for the Men's Bible Study in the Madison room. Moreover, Mr. Kidd also submitted the reservations for RCF's Movie Night.

35. Mr. Kidd has also drafted the various announcements for RCF events in the Regency Newsletter. Less than a week before the Board passed the policy at issue, Mr. Kidd drafted an RCF announcement for the Women's Bible Study. Unbeknownst to Mr. Kidd, this is the announcement that began the issues that follow in this Complaint. That announcement (attached hereto as Exhibit 6) stated:

> Join us for our next series, beginning February 24th and 25th, featuring an 11-week study guide entitled A Faith That Works: Hebrews by Diana Schick. The book of Hebrews in the New Testament uniquely unveils the beauty of Christ and Christianity as God's plan of the ages to meet our deepest needs.

36. Following the above announcement, Mr. Kidd heard rumors that a certain resident complained to the Board about the content/views of the women's Bible study. The individual who complained accused the women's Bible study group of studying an "antisemitic" book.

37. On or about a week later and without any forewarning to Mr. Kidd or RCF, the Board gathered for a virtual meeting and ratified the alarming vote below:

> The unanimous decision to deny use of the Clubhouse and Clubhouse campus to any Club, organization, or entity that is primarily religious, political, or faith based in purpose, nature and/or intent. The use of the clubhouse and clubhouse campus will also be denied (as determined by the BOD) to any other entity that is inherently divisive in purpose, nature and/or intent.

*See* February 7, 2025, email from Board (attached hereto as Exhibit 7).

38. Two days later, the Board, through its President John Scarcella, sent out an email to the community confirming the motion. That email is provided below:

> Just a reminder that the Board of Directors (Board), in response to numerous concerns raised by members of the community, unanimously approved two motions at the February 5, 2025, Board meeting related to both Clubhouse Campus and Regency Logo usage.

The use of the Clubhouse and Clubhouse Campus for religious or partisan political meetings, services or events and the unauthorized use of the Regency logo and/or Clubhouse image(s) not approved for use by the Board are prohibited.

These were not easy decisions to reach, but we needed to quickly address the many comments received over the past few months related to the use of the Clubhouse Campus for religious or political agendas. We must remember that our common facilities are for the enjoyment of all our residents. And while we do not believe it likely that anyone intentionally chose to offend other residents with their stated opinions, teachings and marketing materials, the fact remains that many residents objected to some of the statements, published material, etc., and voiced their concerns.

And contrary to some misinformation, our actions do not prohibit the formation of Clubs with political or religious purposes/intent. Anyone or any group can form a Club with residents with similar interests. However, it is the Board's job make sure the Association Clubhouse and common facilities remain places for overall resident recreation and enjoyment –and in a manner free from undue divisiveness, controversy, and hard feelings.

The Board's position is that it is in the best interests of the community and consistent with our covenants that it may, in accordance with our Policy Resolutions, "deny reservations for events or meetings that would disturb the peace or result insubstantially divisive or incendiary reaction among the membership".

Thus, Clubs with political or religious purposes or intent, should have their meetings, services, and events in places other than the Clubhouse Campus. For those who have lived in Regency for many years, you will remember how the original Bible study group was formed……they met in someone's home rather than our common area…….and there was no controversy. It has only been in the last couple of years that these types of meetings have crept into the Clubhouse with the resulting concerns and negative reactions from some residents.

The complete motions, as unanimously approved by the Board of Directors, are as follows:

No.1 I move to ratify the unanimous decision by the Board to deny use of the Clubhouse and Clubhouse campus to any Club, organization, or entity that is primarily religious, political, or faith based in purpose, nature and/or intent. The use of the clubhouse and clubhouse campus will also be denied (as determined by the BOD) to any other entity that is inherently divisive in purpose, nature and/or intent.

No. 2 I move to ratify the unanimous decision by the Board to prohibit the use of the Regency Clubhouse photo and/or logo facsimile for any purpose not authorized by the Regency Board of Directors. This prohibition to include, but not be limited

to, advertising on any publication, website, marketing materials, unauthorized products, social media accounts and promotional content or media intended to promote any product, service, or brand that is not administered by the HOA or its two major contractors.

Our managing agent, CMC, on behalf of the Board, will be contacting those Clubs affected by these decisions so they can make alternative plans to hold their regularly scheduled meetings. CMC will also ask those Clubs, to remove any unauthorized use of Regency photos and/or logo facsimiles per the direction given in Motion # 2.

Thank you for your understanding, with respect to what was a very difficult situation leading to the actions we took at the February 5, 2025, Board meeting.

39. Mr. Kidd felt as if he was being targeted given the recent rumors and that RCF was the only religious club at Regency.

40. Pursuant to the Board's February 5, 2025, email, on or about February 13, 2025, Mr. Kidd was contacted by Regency's General Manager, Vincent Greco. On behalf of the Board, Mr. Greco stated:

> Good afternoon, Kurt,
>
> I hope this email finds you well.
>
> As the primary contact for the Christian Fellowship, I want to share some important updates on behalf of the Board of Directors, following their recent decisions. The Board has passed two motions, summarized below, which were also included in their message to the community last Friday. I believe you may already be aware of these updates.
>
> As a result of these motions, all clubhouse reservations have been canceled and removed from the Regency website calendar, including:
>
> Tuesday, Men's, and Women's gatherings
>
> Friday morning Bible study
>
> Movie nights
>
> Additionally, if any Regency logos and/or clubhouse images are being used in publications, websites, marketing materials, unauthorized products, social media accounts, or other promotional content, we kindly ask that they be removed.
>
> Please let me know if you have any questions or need any clarification. Thank you for your understanding and cooperation.

**Summary**

The use of the Clubhouse and Clubhouse Campus for religious or partisan political meetings, services or events and the unauthorized use of the Regency logo and/or Clubhouse image(s) not approved for use by the Board are prohibited.

41. Mr. Kidd then removed all photos and Regency logos from RCF's website to comply with one of the motions.

42. On March 12, 2025, through undersigned counsel, Mr. Kidd sent a letter to Regency's counsel, notifying counsel that the special restrictions placed on Mr. Kidd's Bible study and other religious events hosted by RCF in the Clubhouse violated federal law.

43. On March 27, 2025, counsel for Regency responded to Mr. Kidd's letter on behalf of Defendants denying that the Board's actions violated federal law.

44. Upon information and belief, Defendants have permitted a faith-based group to use the Clubhouse and/or Clubhouse campus since enacting the policy targeting Plaintiff's club. Moreover, the Board on April 5, 2025, emphasized that upcoming outside events to take place at Regency include (1) a Bar Mitzvah; and (2) a Muslim wedding.

## COUNT I:
## Violation of the Fair Housing Act, 42 U.S.C. § 3604(b)

45. Mr. Kidd realleges and incorporates by reference the allegations contained in paragraphs 1 – 44 as if fully set forth herein.

46. Pursuant to 42 U.S.C. § 3604(b), Defendant cannot discriminate against homeowners "in the terms, conditions, or privileges of sale . . . or in the provision of services or facilities in connection therewith, because of . . . religion . . . ."

47. HUD regulations specifically prohibit religious discrimination that imposes "different terms, conditions or privileges relating to the sale or rental of a dwelling." 24 CFR 100.65(a). Specifically, these federal regulations prohibit "Limiting the use of privileges, services

or facilities associated with a dwelling because of race, color, religion, sex, handicap, familial status, or national origin of an owner, tenant or a person associated with him or her." 24 CFR 100.65(b)(4).

48. The U.S. Department of Justice has explained the right of equal access to common rooms:

> No one may be discriminated against in the sale, rental or enjoyment of housing because of their religious beliefs. This includes equal access to all the benefits of housing: someone could not, for example, be excluded from reserving a common room for a prayer meeting when the room may be reserved for various comparable secular uses.

U.S. DOJ, *Know Your Rights: Federal Laws Protecting Religious Freedoms*, https://www.justice.gov/sites/default/files/crt/legacy/2010/12/15/know_your_rights.pdf (last visited March 27, 2025).

49. Under the terms, conditions, privileges, and/or provision of services as described in Regency's governing documents and Clubhouse Manual, Regency members/owners are entitled access to the clubhouse and clubhouse campus. Access to the Clubhouse and Clubhouse Campus is subject to rules and regulations regulating the use and enjoyment of common areas.

50. When enforcing rules and regulations, Defendants cannot impose different terms, conditions or privileges on Plaintiff because of his religion. Here, every club that has been formed at Regency can access the Clubhouse and Clubhouse Campus for their events, except one: Regency Christian Fellowship.

51. In enforcing the February 5, 2025, policy as passed by the Board, Defendants unlawfully imposed different terms, conditions, and privileges of sale by prohibiting the "use of the Clubhouse and Clubhouse campus to any Club, organization, or entity that is primarily religious . . . or faith based in purpose, nature and/or intent." Meanwhile, other clubs, residents,

and outside members of the public can use the Clubhouse and Clubhouse Campus for their events. Moreover, this rule also discriminates in the provision of services or facilities in connection therewith.

52. But for the Christian purpose, nature and/or intent of Mr. Kidd's club, it would have the same access as non-religious groups.

53. For example, Mr. Kidd's Bible study is prohibited from the Clubhouse, but a secular book club can use the same area with no restrictions on its use.

54. On its face, the rule singles out Mr. Kidd and RCF for disparate treatment based on their religion.

55. In application, the rule denies the use of the clubhouse and clubhouse campus, otherwise available for use by any other club, because Mr. Kidd's club is a Christian club.

56. Similarly situated individuals outside Mr. Kidd's protected class are treated more favorably by their continued use of the Clubhouse and Clubhouse Campus.

## COUNT II:
## Violation of the Fair Housing Act, 42 U.S.C. § 3617

57. Mr. Kidd realleges and incorporates by reference the allegations contained in paragraphs 1–44 as if fully set forth herein.

58. Pursuant to the FHA, it is unlawful to "coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by" 42 U.S.C. § 3617.

59. The U.S. Department of Housing and Urban Development has issued regulations further clarifying conduct that is illegal under §3617 of the FHA. 24 C.F.R. § 100.400. Specifically,

HUD explains that a violation under §3617 includes, "interfering with persons in their enjoyment of a dwelling because of the . . . religion . . . of such persons." 24 C.F.R. 100.400(c)(2).

60. Under the FHA, Mr. Kidd has a right to enjoy the privileges of housing free from discrimination. In other words, Mr. Kidd has a right to be treated equally without regard to his particular religion.

61. By singling out and prohibiting Mr. Kidd's Christian club from using the clubhouse and clubhouse campus, while all other Regency clubs are permitted to use those same areas, Defendants have interfered with Mr. Kidd's right to enjoy the privileges of housing free from discrimination.

## COUNT III:
## Violation of the Virginia Fair Housing Law, Va. Code § 36-96.3.A.2

62. Mr. Kidd realleges and incorporates by reference the allegations contained in paragraphs 1–44 as if fully set forth herein.

63. Pursuant to, Va Code § 36-96.3.A.2, Defendant is prohibited from discriminating against homeowners "in the terms, conditions, or privileges of sale . . . or in the provision of services or facilities in connection therewith, because of . . . religion . . . ."

64. Under the terms of Regency's governing documents and Clubhouse Manual, Regency members are entitled access to the clubhouse and clubhouse campus. The access to the clubhouse and clubhouse campus is subject to rules and regulations regulating the use and enjoyment of common areas.

65. When enforcing rules, policies, and/or regulations, Defendant cannot impose different terms, conditions, or privileges on Plaintiff because of his religion. Here, every remaining club at Regency can access the Clubhouse and Clubhouse Campus for their events, except one: Regency Christian Fellowship.

66. In enforcing the February 5, 2025, motion, Defendants unlawfully imposed different terms, conditions, and privileges of sale by prohibiting the "use of the Clubhouse and Clubhouse campus to any Club, organization, or entity that is primarily religious . . . or faith based in purpose, nature and/or intent." Moreover, this rule also discriminates in the provision of services or facilities in connection therewith.

67. But for the Christian purpose, nature and/or intent of Mr. Kidd's club, it would have the same access as non-religious groups.

68. The rule gives the Board no other choice than to deny access to the clubhouse or clubhouse campus *because of religion*.

## COUNT IV
### Violation of the Virginia Fair Housing Law, Va. Code § 36-96.5

69. Mr. Kidd realleges and incorporates by reference the allegations contained in paragraphs 1–44 as if fully set forth herein.

70. Pursuant to Virginia state law "[i]t shall be an unlawful discriminatory housing practice for any person to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on the account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by this chapter" Va. Code § 36-96.5.

71. Pursuant to the Virginia Fair Housing Law, Mr. Kidd has a right to enjoy the privileges of housing free from discrimination. In other words, Mr. Kidd has a right to be treated equally without regard to his particular religion.

72. By singling out and prohibiting Mr. Kidd's Christian club from using the clubhouse and clubhouse campus while all other Regency clubs are permitted to use the same areas,

14

Defendants have interfered with Mr. Kidd's right to enjoy the privileges of housing free from discrimination.

**PRAYER FOR RELIEF**

Wherefore, Plaintiff respectfully demands a jury and requests the following relief:

(A) A declaratory judgment that Defendants' conduct constitutes illegal discrimination against Plaintiff's protected religious status under the Fair Housing Act and Virginia Fair Housing Law;

(B) Injunctive relief preventing Defendants, its agents, officials, servants, employees, and any other persons acting on their behalf from prohibiting Mr. Kidd and RCF from using the Clubhouse or Clubhouse Campus for religious gatherings;

(C) Actual compensatory or, in the alternative, nominal damages for the violation of Plaintiff's protected rights pursuant to 42 U.S.C. § 3613(c)(1);

(D) Punitive damages for the violation of Plaintiff's protected rights pursuant to 42 U.S.C. § 3613(c)(1);

(E) Plaintiff's reasonable attorneys' fees, costs, and other costs and disbursements in this action pursuant to 42 U.S.C. § 3613(c)(2);

(F) Any other determinations and/or relief the Court deems just and proper; and

(G) Plaintiff demands a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Respectfully submitted,

/s/ Nathan Moelker
Nathan Moelker (VSB No. 98313)
Stuart J. Roth*
Andrew J. Ekonomou*
Benjamin P. Sisney (VSB No. 98019)
Christina A. Compagnone* (VSB No. 91658)
AMERICAN CENTER FOR
LAW & JUSTICE
201 Maryland Ave. NE
Washington, D.C. 20002
Phone: (202) 546-8890
Facsimile: (202) 546-9309
Email: nmoelker@aclj.org

Geoffery R. Surtees*
AMERICAN CENTER FOR
LAW & JUSTICE
P.O. Box 60
New Hope, KY 40052
Phone: (502) 549-7020
Email: gsurtees@aclj.org

Garrett A. Taylor*
AMERICAN CENTER FOR
LAW & JUSTICE
625 Bakers Bridge Avenue
Franklin, TN 37067
Phone: (615) 599-5572, ext. 4008
Email: gtaylor@aclj.org

*Pro Hac Vice motions forthcoming

**ATTORNEYS FOR PLAINTIFF**