UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| KURT KIDD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action No.: 1:25-cv-00599 |
| ) | |
| ASSOCIA COMMUNITY ) | |
| MANAGEMENT CORPORATION, et al., ) | |
| ) | |
| Defendants. ) | |

### PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Plaintiff Kurt Kidd, by counsel, opposes Defendants' motion to dismiss. As set forth below, Plaintiff has alleged facts sufficient to support a claim for relief under the Fair Housing Act and the Virginia Fair Housing Law. Defendants' motion should be denied.

### Introduction

Mr. Kidd brings this lawsuit to vindicate his rights under the Fair Housing Act ("FHA") and the Virginia Fair Housing Law ("VFHL"). In his complaint, Mr. Kidd alleges that Defendants (1) discriminated against him in the terms, conditions, privileges, and/or provision of services or facilities because of his religion; and (2) interfered with his rights to enjoy the privileges of housing free from religious discrimination.

The Policy at issue, "deny[ing] use of the Clubhouse and Clubhouse campus to any Club, organization, or entity that is primarily religious, political, or faith based in purpose, nature and/or intent," explicitly—and illegally—targets Regency members, including Mr. Kidd, for exclusionary treatment based on religion, a protected class under the FHA. Under the terms of the Policy, a secular club can study the Bible as history or literature, but Mr. Kidd and his club cannot study that same text because of their religious purpose, nature, and intent. A secular club can watch

whatever movie it chooses, but Mr. Kidd and his club cannot use the Clubhouse to watch that very same movie—simply because of their religious identity. The discrimination is blatant.

The Policy's animus against religion is evident from the words of the Policy itself. In excluding "any *other* entity that is *inherently divisive* in purpose, nature and/or intent," the policy communicates the undeniable implication that an entity with a religious nature is somehow "inherently divisive." The Regency Board can no more categorize "religion," a protected class under the FHA, as "inherently divisive," and therefore subject to discriminatory treatment, than it can do so regarding any other class protected by the FHA: race, color, national origin, sex, familial status, and disability.

Contrary to Defendants' arguments, the allegations of the complaint support an inference that the Board enacted a discriminatory policy to specifically target Mr. Kidd's religion. The Policy—on its face and as applied to Plaintiff—limits privileges of homeownership based solely on a protected characteristic. Defendants claim that the Policy applies to all religious clubs. Discriminating against the entirety of a protected class, however, is illegitimate. Moreover, the Policy was enacted to target and single out Mr. Kidd and his club, the only religious club at the HOA. At the same time, secular clubs are free to use the Clubhouse without any restrictions.

### Factual Allegations

Mr. Kidd is a Christian and actively participates in faith-based activities with fellow Regency members. Mr. Kidd is a homeowner and moved to Regency at Dominion Valley ("Regency") in 2016. Compl. at ¶¶ 3, 11. Regency is intended for individuals 55 years of age and older and is managed by Associa Community Management Company ("CMC"). Compl. at ¶¶ 12, 13. Mr. Greco is the General Manager of the HOA and an employee of CMC. Compl. at ¶13. CMC has offices at Regency. Compl. at ¶ 5. Any individual who purchases a home is granted an easement

by the HOA's declaration for the use and enjoyment of the HOA's common areas. Compl. at ¶ 25. Among these common areas and amenities are the Clubhouse and Clubhouse campus. Compl. at ¶¶ 31, 49. Various secular clubs, including multiple book clubs, may use the Clubhouse. Compl. at ¶ 23.

Mr. Kidd led and participated in a men's Bible study before forming the Regency Christian Fellowship. Compl. at ¶¶ 14, 16, 17. Once the Bible study became too large to host in a home, Mr. Kidd and the group sought a larger space. Compl. at ¶ 14. The Bible study met in the Madison room, free of charge and open to all residents. Compl. at ¶¶ 17, 18. Once the event begins, Mr. Kidd and the group meet privately within the four walls of their reserved space. Compl. at ¶ 18

The HOA's actions at the center of this dispute followed a complaint from a resident that rested solely on the religious content of a women's Bible study. Compl. at ¶¶ 36, 37, 38. The HOA then passed a policy to categorically ban Mr. Kidd's religious gatherings by specifically "deny[ing] use of the Clubhouse and Clubhouse campus to any Club, Organization or entity that is *primarily religious . . .* or *faith based in purpose, nature, and/or intent.*" Compl. ¶ 37 (emphasis added). Because "these types of meetings have crept into the clubhouse," the HOA decided that "Clubs with . . . religious purposes or intent" could no longer use the clubhouse or clubhouse campus. Compl. at ¶ 38. Mr. Greco then informed Mr. Kidd that his use of the Clubhouse for his Bible study would no longer be permitted. Compl. at ¶ 40. Specifically, Mr. Greco enforced the Policy as to Mr. Kidd by canceling Mr. Kidd's religious gatherings in the Clubhouse. *Id.* Gatherings of the Regency Christian Fellowship included faith-based "Movie nights." *Id.*

## Standard of Review

To defeat Defendants' motion to dismiss, Plaintiff need only plead enough facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

3

Courts evaluate a complaint in its entirety, including attached documents. *E. I. de Pont de Nemours & Co. v. Kolon Indus.*, 637 F.3d 435, 448 (4th Cir. 2011) (citations omitted). A plaintiff's claim is plausible when he pleads sufficient facts that allow the court to reasonably infer that the defendant is liable for the illegal conduct alleged. *Adams v. NaphCare, Inc.*, 244 F. Supp. 3d 546, 548 (E.D. Va. 2017) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In other words, a plaintiff satisfies this pleading requirement when the complaint is supported by allegations that "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The Court must accept all well-pleaded facts as true and favor plaintiff with all reasonable inferences. *Ctr. Law & Consulting, LLC v. Axiom Res. Mgmt.*, 456 F. Supp. 3d 765, 768 (E.D. Va. 2020).

## Argument

I. **Plaintiff[1] has sufficiently alleged a claim under the FHA and VFHL.**

The Fair Housing Act ("FHA") has a "broad and inclusive compass," *City of Edmonds v. Oxford House, Inc.*, 514 U.S. 725, 731 (1995), that protects individuals from being discriminated against or harassed in the housing market—including because of religion. It is entitled to "generous construction." *Id.* (quoting *Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 209 (1972)). "The Act itself implements a policy to which Congress has accorded the highest priority and is to be liberally construed in accordance with that purpose." *United States v. Henshaw Bros., Inc.*, 401 F. Supp. 399, 402 (E.D. Va. 1974).

This Court has explained that the VFHL tracks the FHA and is analyzed under the same standard. *Ochar v. Ameris Bank*, 1:24-cv-0995, 2024 U.S. Dist. LEXIS 146161, at *8 (E.D. Va. Aug. 15, 2024). This Court has also noted that a plaintiff sufficiently pleads a religious

---

[1] The FHA defines "aggrieved person" as anyone "who claims to have been injured by a discriminatory housing practice." 42 U.S.C. § 3602(i). As a result of Defendants' discriminatory policy, Plaintiff cannot hold any religious gathering in the clubhouse or clubhouse campus. Thus, he has suffered harm and has standing.

4

discrimination claim under the FHA when he alleges that (1) he is a member of a protected class and (2) that he was treated differently than other members of the HOA because of his religion. *See Chacko v. Preston*, No. 1:23-cv-551-PTG-IDD, 2024 U.S. Dist. LEXIS 38816, at *11 (E.D. Va. March 5, 2024). In other words, "the plaintiff must make a modest showing that a member of a statutorily protected class was not offered the same terms, conditions, or privileges of a dwelling or not provided the same services or facilities in connection therewith made available to others[.]" *Reaves v. Powers*, No. 4:21-3188-JD-KDW, 2022 U.S. Dist. LEXIS 24034, at *15 (D.S.C. Jan. 14, 2022) (citation omitted). The Fourth Circuit has recognized that "much of our FHA jurisprudence is drawn from cases interpreting Title VII." *Hall v. Greystar Mgmt. Servs., L.P.*, 637 F. App'x 93, 98 (4th Cir. 2016). Neither this Court nor the Fourth Circuit has squarely decided whether an HOA rule or policy that categorically prohibits religious gatherings discriminates against a homeowner in the terms, conditions, or privileges of a sale and/or in the provision of facilities in connection therewith. However, the text of the FHA itself and other circuits interpreting the FHA are instructive. It is also highly persuasive that the Department of Justice has expressly addressed this precise situation and found it unlawful:

> No one may be discriminated against in the sale, rental or enjoyment of housing because of their religious beliefs. This includes equal access to all the benefits of housing: someone could not, for example, be excluded from reserving a common room for a prayer meeting when the room may be reserved for various comparable secular uses.

U.S. Department of Justice, *Know Your Rights: Federal Laws Protecting Religious Freedoms*, https://www.justice.gov/sites/default/files/crt/legacy/2010/12/15/know_your_rights.pdf (last visited May 9, 2025).

Under the FHA, it is unlawful "to discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection

5

therewith, because of . . . religion." 42 U.S.C. § 3604(b). In order to prevail, "plaintiffs, members of a discrete minority, are required to prove only that a given policy had a discriminatory impact on them as individuals." *Betsey v. Turtle Creek Assocs.*, 736 F.2d 983, 987 (4th Cir. 1984). Other courts have noted the unique nature of property ownership within an association as it relates to the applicability of § 3604(b). *See Bloch v. Frischholz*, 587 F.3d 771, 779-81 (7th Cir. 2009) (en banc) (explaining that at the time of purchasing a unit, an agreement to be governed by a condo association is "nonetheless a term or condition that brings this case within § 3604(b)); *see also Watts v. Joggers Run Prop. Owners Ass'n*, No. 22-13763, 2025 U.S. App. LEXIS 8133, at *18-19 (11th Cir. April 7, 2025) (explaining that beyond the rights associated with homeownership itself, HOA rules create "additional rights" which include access to shared amenities and these additional rights fall squarely within Section 3604(b)'s "privileges, services and facilities associated with a dwelling."). An HOA cannot apply its rules, even facially neutral rules, in a way that discriminates because of religion. *Bloch*, 587 F.3d at 780 ("§ 3604(b) prohibits the [homeowners' a]ssociation from discriminating against the [homeowners] through its enforcement of the rules, even facially neutral rules."). Moreover, the Department of Housing and Urban Development interprets Section 3604(b) to prohibit "limiting the use of privileges, services, or facilities associated with a dwelling because of [the] religion . . . of an owner . . ." 24 C.F.R. 100.65(b)(4).

      One particularly useful case is *Morris v. W. Hayden Ests. First Addition Homeowners Ass'n*, 104 F.4th 1128 (9th Cir. 2024). *Morris* held that a jury could properly conclude that an HOA "Board's threatening, intimidating, and interfering conduct, although it did not preclude the Morrises from purchasing their home or putting on their Christmas event, was driven at least in part by a motive to disfavor the Morrises' religion. On this question, the Morrises' evidence is sufficient to support a rational jury's verdict." *Id.* at 1143. In *Morris* there was evidence that

6

facially neutral rules were applied in a fashion that was not evenhanded but motivated by religious animus and a desire to "protect" people from religion. *Id.* at 1139 (acknowledging that "[t]he HOA's CC&Rs are facially neutral" but nonetheless affirming the jury verdict).

Defendants argue that Mr. Kidd's allegations are insufficient to allege that he has been treated differently than any other HOA members because the Policy applies to all members, and Mr. Kidd still maintains all the same rights as other members. *See* ECF No. 20 at 4. To support this argument, Defendants say that because "no book club based on a religious text would be permitted to use the Clubhouse for its meeting" is "true for all Members," there is no discriminatory treatment of Mr. Kidd or his group. *Id*. Based on that reasoning, Regency could ban a club whose purpose is to celebrate racial heritage and diversity or one whose nature is to provide emotional support for the disabled. Even more absurd than that, while a religious club studying a religious text is *verboten* under the Policy, a book club based on texts trashing or debunking religion is permitted. Moreover, under the Policy, a club that is primarily *anti*-religious in "purpose, nature and/or intent" could meet in the very same Clubhouse where Mr. Kidd and his club are forbidden. Such a club could read whatever it chooses and watch whatever movie it chooses.

The discriminatory and anti-religious nature of the Policy is readily apparent. Indeed, the U.S. Department of Justice described the following as a textbook example of unlawful religious discrimination under the FHA: "An apartment complex has a meeting room that is available for residents to reserve for card games, social activities, and similar events. A resident is told that she may not use the room to hold a Bible study with friends." U.S. Department of Justice, *Protecting the Religious Freedom of All: Federal Laws Against Religious Discrimination*, at 4-5, https://www.justice.gov/sites/default/files/crt/legacy/2010/12/15/religiousfreedom.pdf (last

visited May 10, 2025). Mr. Kidd's rights and privileges associated with his homeownership have been limited precisely because of his religious identity.

Mr. Kidd alleges that he is a homeowner, and all homeowners are granted an easement by the HOA's declaration for the use and enjoyment of common areas. Compl. at ¶ 25. Among these common areas is the Clubhouse and Clubhouse campus. Compl. at ¶¶ 31, 49. Use of the HOA facilities falls squarely within 42 U.S.C. § 3604(b). *Watts*, 2025 U.S. App. LEXIS 8133 at *18. Plaintiff is a member of the HOA's only religious club, Regency Christian Fellowship, and hosted a men's Bible study in the clubhouse for years. Compl. at ¶¶ 14, 15, 16, 17, 39. The HOA passed a policy to categorically ban Mr. Kidd and his club by specifically "deny[ing] use of the Clubhouse and Clubhouse campus to any Club, Organization or entity that is *primarily religious . . . or faith based in purpose, nature, and/or intent*." Compl. at ¶ 37 (emphasis added). Mr. Greco then informed Mr. Kidd that his use of the Clubhouse for his Bible study would no longer be permitted. Compl. at ¶ 40. At the same time, HOA members are free to host secular events without special restrictions. Compl. at ¶ 23. Mr. Kidd has thus been robbed of a privilege otherwise afforded to other homeowners in the HOA solely because of his religious identity and the religious nature of his group. The fact that all members are prevented from being a member of a religious club with use of the Clubhouse does not negate the fact that the privilege was limited or taken away from Mr. Kidd solely because of religious identity or "nature." Therefore, pursuant to the FHA and VFHL, Mr. Kidd has sufficiently alleged he is being treated differently than other members solely because of his religion.

Defendants' argument that a policy that targets the actions of all members of a protected class and is "facially neutral" is not discriminatory flips the FHA on its head. Facially neutral rules banning all ramps would violate the rights of those with disabilities just as much as a targeted rule

8

would. In addition, "facially neutral numerical occupancy restrictions violate the Act if they have a discriminatory effect, irrespective of intent." *Fair Hous. Council v. Ayres*, 855 F. Supp. 315, 318 (C.D. Cal. 1994). Seminal cases like *Bloch* have highlighted that "even facially neutral rules" can violate FHA rights. *See* 587 F.3d at 780.

Defendants rely on *Savanna Club Worship Serv. v. Savanna Club Homeowners' Ass'n*, 456 F. Supp. 2d 1223 (S.D. Fla. 2005), as grounds for dismissal. Even assuming that case was correctly decided, it is readily distinguishable. The policy in that case provided that "[n]o portion of the common areas of Savanna Club may be used for any *religious services*." *Id.* at 1225 (emphasis added). The policy here, however, is far broader in scope and denies use of the Clubhouse and Clubhouse campus "to any Club, Organization or entity that is *primarily religious . . .* or *faith based in purpose, nature, and/or intent*"—regardless of the type of activity.

A ban on religious services is fundamentally different than banning religious people or entities from using the space at all, which is what this policy does on its face because of their religious "nature." A nonreligious club can have a movie night, but a religious club cannot have one *viewing the exact same movie*. This contrasts with *Savanna Club* where "[t]he Application of a Rule barring all religious services from a community's common areas without impeding a homeowner's right to practice his or her religion, and without denying access to the common areas for all other purposes is not sufficient to established that the club is being treated differently from persons of other religions." *Savanna Club,* 456 F. Supp. at 1232. Here, Regency is denying access to the common areas for religious users; in other words, excluding the entirety of the protected class from the use of the space.[2]

---

[2] The remark in *Savanna Club*, doubly emphasized by Defendants, ECF No. 20 at 6, that "[t]he right to religious freedom must encompass the right to be free from religion," is not only misplaced as to the facts of this case; it is misguided on its face. It is misplaced because there is nothing in

9

The Third Circuit has emphasized "[w]here a regulation or policy facially discriminates on the basis of the protected trait, in certain circumstances it may constitute per se or explicit discrimination because the protected trait by definition plays a role in the decision-making process." *Curto v. A Country Place Condo. Ass'n*, 921 F.3d 405, 410 (3d Cir. 2019) (quoting *Cmty. Servs., Inc. v. Wind Gap Mun. Auth.*, 421 F.3d 170, 177 (3d Cir. 2005)). Here, the exclusion from the Clubhouse is triggered solely by the religious identity of Mr. Kidd's club. By its express terms, the Policy draws a distinction between religious and nonreligious clubs and denies an HOA privilege based solely on a protected characteristic. Thus, Mr. Kidd has sufficiently alleged that the challenged Policy facially discriminates against him because of his religion.[3]

Lastly, as it relates to the remaining claims under the FHA and VFHL, Defendants' sole argument is that because Plaintiff has not adequately alleged discrimination, the claims under §3617 and Va. Code §36-39.5 must fail. As argued above, however, Mr. Kidd has sufficiently alleged discrimination and his claims under §3617 and Va. Code §36-39.5 should not be dismissed.

---

the complaint remotely suggesting that Kidd and his club foist their religious beliefs on anyone. Like other groups, they use a room to study a book, i.e., the Bible, and watch films. No Regency member's right to be free from religion is being impeded, hampered, or burdened (unlike Mr. Kidd's right to religious freedom). The remark is also misguided because it slights the importance of religion as a protected class under the FHA. No court would possibly assert that "the right to racial equality must encompass the right to be free from racial equality." Regency can no more discriminate against religion in the interests of those who wish to be free from it than it can discriminate against race in the interests of bigots.

[3] The discriminatory nature of what Defendants have done is seen clearly by considering the same set of facts but involving a different protected class: A club at Regency, which happens to be comprised only of African Americans though all races are welcome, has been using the Clubhouse for seven years to study Black history. An HOA member complains about this club to the Board. Kowtowing to the demands of the member, the Board adopts a policy denying use of the Clubhouse to any group that is racial in nature or purpose. Even though, according to Defendants' thinking, there would be nothing amiss about that—the policy would apply to all Members and the club could still meet in the privacy of their homes—it doesn't take much speculation to see how a court would rule in the face of an FHA claim brought by a member of such a club.

## II. The Complaint sufficiently states a cause of action against CMC.

Defendants, without citing any caselaw or legal support,[4] contend that CMC should be dismissed as a party because there are no allegations that CMC "enacted any rule or policy which interferes with Plaintiff's rights or discriminates against him." ECF No. 20 at 7. The law rejects this purported standard. *Sekel v. CH MF BTH II*, 2024 U.S. Dist. LEXIS 17618, *3 (E.D. Va. 2024) (allowing a FHA retaliation claim to proceed against defendants, including a management company). The FHA applies to "businesses that provide services related to housing such as . . . management companies." *Wolf v. City of Millbrae*, 21-cv-00967, U.S. Dist. LEXIS 159025, at *18 (N.D. Cal. 2021). Courts have recognized that property management companies can be held liable for engaging in any activity prohibited by the FHA. *See Sanzaro v. Ardiente Homeowners Ass'n, LLC*, 364 F. Supp. 3d 1158, 1176 (D. Nev. 2019); *Milsap v. Cornerstone Residential Mgmt.*, 2005 U.S. Dist. LEXIS 1147 (S.D. Fla. Jan. 28, 2005). Plaintiff alleges that CMC manages the HOA. Compl. at ¶ 13. Mr. Greco, the General Manager of the HOA, is an employee of CMC. *Id.* Mr. Greco, on behalf of the board and in his capacity as a CMC employee, enforced the HOA's Policy against Mr. Kidd and interfered with Plaintiff's rights when he notified Mr. Kidd that all of RCF's reservations to use the Clubhouse were denied. Compl. ¶40. Mr. Kidd has thus sufficiently alleged conduct that sustains a cause of action against Defendant CMC, and it should not be dismissed as a party.

## Conclusion

For the foregoing reasons, Plaintiff respectfully requests that this court deny Defendants' motion to dismiss in its entirety.

---

[4] This alone is grounds for rejection: a party waives an argument "by failing to develop its argument—even if its brief takes a passing shot at the issue." *Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017) (cleaned up).

Respectfully submitted,

/s/ Nathan Moelker
Nathan Moelker (VSB No. 98313)
Stuart J. Roth*
Andrew J. Ekonomou*
Benjamin P. Sisney (VSB No. 98019)
Christina A. Stierhoff** (VSB No. 91658)
AMERICAN CENTER FOR
  LAW & JUSTICE
201 Maryland Ave. NE
Washington, D.C. 20002
Phone: (202) 546-8890
Facsimile: (202) 546-9309
Email: nmoelker@aclj.org

Geoffrey R. Surtees*
AMERICAN CENTER FOR
  LAW & JUSTICE
P.O. Box 60
New Hope, KY 40052
Phone: (502) 549-7020
Email: gsurtees@aclj.org

Garrett A. Taylor*
AMERICAN CENTER FOR
  LAW & JUSTICE
625 Bakers Bridge Avenue
Franklin, TN 37067
Phone: (615) 599-5572, ext. 4008
Email: gtaylor@aclj.org

*Admitted Pro Hac Vice
** Admission forthcoming

**ATTORNEYS FOR PLAINTIFF**

**Certificate of Service**

I hereby certify that on May 13, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system. Electronically filing with the CM/ECF system will notify all counsel of record via email.

/s/ Nathan Moelker
Nathan Moelker (VSB No. 98313)
