UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| KURT KIDD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:25-cv-00599 |
| ) | |
| REGENCY AT DOMINION VALLEY OWNERS ) | |
| ASSOCIATION, INC., et al., ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS**

Defendants, Regency at Dominion Valley Owners Association, Inc. (the "Association") and Associa Community Management Corporation ("CMC") (jointly, the "Defendants"), by counsel, submit this Reply in Support of their Motion to Dismiss the Complaint filed by Kurt Kidd ("Plaintiff" or "Mr. Kidd").

The Motion should be granted in its entirety. Plaintiff has not pled sufficient facts to state a plausible claim that he has been discriminatorily deprived of a right under the standards of the Fair Housing Act ("FHA") or the Virginia Fair Housing Law ("VFHL"). The policy of which Plaintiff complains is applied equally and neutrally across all members of the Association. Moreover, Plaintiff, and indeed all members of Regency Christian Fellowship ("RCF" or the "Club"), remain fully able to access and utilize the Association's Clubhouse as individuals or as participants in other clubs which comply with the Association's duly enacted and facially neutral policy for use of the clubhouse. In fact, RCF remains an approved club in the Association, is advertised as such on Regency's website, and nothing prevents the Club from continuing to meet and operate in locations other than the Clubhouse campus.

At bottom, Plaintiff remains able to utilize the clubhouse in the same manner as any other member of the Regency community, and he may continue to participate in the Club. Plaintiff has been treated no differently than any other member of the community. Accordingly, he has not stated a sufficient claim for a violation of 42 U.S.C. § 3604(b).[1] Consequently, his claim of a violation of § 3617 cannot be sustained. Finally, even if this Court allows Plaintiff's claims to proceed, CMC should be dismissed as a Defendant as the Complaint alleges no discriminatory action by the entity at all.

**I.     The Fourth Circuit has not determined that a post-acquisition, facially neutral HOA regulation can in fact violate a homeowner's right under the FHA.**

This Court is under no mandatory authority to find that the alleged actions of the Association or CMC could conceivably violate the FHA. Plaintiff explicitly acknowledges as much. Resp. at 5 ("Neither this Court nor the Fourth Circuit has squarely decided whether an HOA rule or policy . . . discriminates against a homeowner . . . ."). Plaintiff places reliance on out-of-circuit authority and even quotes an excerpt of an undated, unsigned flyer prepared by the Department of Justice, hoping the imprimatur of the DOJ seal will distract the Court from the fact it is far from an authoritative statement of law. Conversely, many courts have found that a violation of § 3604(b) can only occur from very limited, specific instances of post-acquisition conduct—if at all. *See Savanna Club Worship Serv. v. Savanna Club Homeowners' Ass'n*, 456 F. Supp. 2d 1223, 1228 (S.D. Fla. 2005) (collecting cases). The reality is that this Court may indeed find that the FHA does not apply to this case and decline to transform this neighborly squabble

---

[1]     Parties agree that the VFHL and the FHA are analyzed under the same standard. ECF No. 25: Resp. at 4; *See Matarese v. Archstone Pentagon City*, 795 F. Supp. 2d 402, 412, n. 3 (E.D. Va. 2011) (observing that the VFHL essentially tracks the FHA and is to be analyzed generally under the same standards), *aff'd in part and vacated in part on other grounds*, 468 Fed. Appx. 283 (4th Cir. 2012). Accordingly, if dismissal of the FHA claim is appropriate, it follows that the VFHL claim under Va. Code. § 36-96.3(A)(2) must also be dismissed.

into a federal cause of action. *See Morris v. W. Hayden Ests. First Addition Homeowners Ass'n*, 104 F.4th 1128, 1143 (9th Cir. 2024).

II. **Plaintiff has not been discriminated against as an individual, so his claim of discrimination must fail.**

Plaintiff does not satisfy the standard he puts forth. Plaintiff propounds that, in order to plead a religious discrimination claim under the FHA, a plaintiff must allege "that (1) he is a member of a protected class and (2) that he was treated differently than other members of the HOA because of his religion." Resp. at 4-5 (citing *Chacko v. Preston*, No. 1:23-cv-551, 2024 U.S. Dist. LEXIS 38816, at *11 (E.D. Va. March 5, 2024)). The problem for Mr. Kidd is that the policy treats him in the *exact same manner* as all other members of the Association, and he retains the *exact same privileges* of access to the Clubhouse as any other member of the Association. Plaintiff attempts sleight of hand to distract the Court from this basic fact, conflating in numerous instances Mr. Kidd with "his group" or "his club."[2] In other words, Plaintiff attempts to argue that he himself experienced discrimination when in fact his allegations are that the Club he was a part of was treated differently than other clubs. However, this suit is brought by Mr. Kidd in his individual capacity—not by Regency Christian Fellowship. Thus, to state a plausible claim of an FHA violation, Mr. Kidd must show that <u>he</u>, individually, was treated differently than other members of the Association, not that RCF was treated differently than other clubs at Regency.[3]

---

[2] The Complaint alleges that Mr. Kidd actively participates in Club events and is the point of contact for the Club. ECF No. 1: Compl. at ¶ 17. It is unclear whether Mr. Kidd formed RCF, as Plaintiff provides a blank form from to "Request to Form a Regency Club." Compl., Exh. 4. Regardless of the formation of the Club, Mr. Kidd and RCF are not synonymous and he cannot bring claims on behalf of the entity.

[3] Plaintiff urges that he has statutory standing as an "aggrieved person" under the FHA. Resp. at 4 n.1 (citing 42 U.S.C. § 3602(i)). However, this is distinct from both the Article III requirement that Plaintiff have a concrete and particularized injury, *Spokeo, Inc. v. Robins*, 578 U.S. 330, 334 (2016), as well as § 3604(b)'s requirement that a plaintiff have been discriminated against. Put succinctly, even if

Plaintiff's hypothetical examples illustrate the inherent disconnect at the heart of the case. Plaintiff urges that a club that provides emotional support for the disabled could be similarly banned by the Association under its policy. *See* Resp. at 7. This statement is wrong on multiple levels. First, the Association has not "banned" RCF from operating. Second, and notably, the hypothetical deals solely with clubs, not individuals. Just as he is able to participate in RCF events now, Mr. Kidd would be able to participate in an emotional support group for the disabled. Whether the events happen inside or outside the Clubhouse pursuant to Association policy is immaterial to an individual's ability to exercise their freedom of association to participate in the club.

Plaintiff's example of an anti-religious club further reveals the policy's facially neutral nature and applicability to all members of the Association. Once more, Plaintiff complains of the treatment of a hypothetical club, not an individual. In reality, a club that was "primarily anti-religious in 'purpose, nature, and/or intent'" would be denied use of the Clubhouse because it is inherently divisive in nature and violative of the policy. Resp. at 7 (quoting the Association policy). Plaintiff's parade of hypotheticals can be matched. Just as RCF's ability to use the clubhouse has been restricted, a club rooted in the study and promotion of Judaism, Islam, or Buddhism would be restricted, too. However, Mr. Kidd and his neighbors of other faiths would still be able to participate in their respective clubs outside of Clubhouse property and access Clubhouse property for all other allowed purposes. Simply put, the policy does not discriminate against Mr. Kidd in a manner that is unique to him as an individual or even discriminate against the non-plaintiff Club in a way that is unique to it.

---

Mr. Kidd is an "aggrieved person" under the FHA, it does not automatically confer standing upon him or make him the proper plaintiff to bring the claim he seeks.

4

### III. Plaintiff cannot show the necessary deprivation of a provision of services to properly allege a violation of the FHA.

Plaintiff maintains the ability to live in his home, practice his religion, access and utilize the Clubhouse, and join and participate in club events just as he could before the Association enacted the policy at issue. Just as Plaintiff has not been discriminated against as an individual, he has not been deprived of the "privileges . . . of a dwelling [or] the provision of services or facilities in connection therewith" as is required under the FHA either. § 3604(b). "[C]ertain 'provision of services' are associated with home ownership within [planned communities] . . . so complete deprivation of these services, even post-acquisition, would be addressable under the FHA." *Savanna* Club, 456 F. Supp. 2d at 1231. However, "the FHA only applies to those deprivations in the provision of services which cause a complete denial of access to such services." *Id.* at 1232. Because Mr. Kidd retains the easement of use and enjoyment of the common areas subject to the Association's policies, he has not been completely deprived of services provided by the Association and thus his allegations are not addressable under the FHA.

*Savanna Club* is instructive both for its similarities to this case and one key difference. Notably, the club itself was the plaintiff in that case and brought suit, as opposed to an individual member of a club as Plaintiff is here. The court noted "[t]he fact that it is more desirable or easier for Club members to practice their religion in Savanna's common areas, does not make their current or future homes unavailable as contemplated by the FHA." *Id*. As is also absent here, the plaintiff in *Savanna Club* did not allege individual homeowners were unable to access or utilize Savanna's common areas categorically, or that club members could not associate on in non-common areas, or that the club was somehow treated differently under the policy than other similarly situated clubs. *Id.* at 1230. Because Mr. Kidd does not allege that he no longer has access to, among other privileges, the Middleburg Grill or the Madison Room, is unable to attend

5

all other clubs' meetings at the Clubhouse or is unable to attend RCF events outside of the clubhouse, he does not state a viable claim under the FHA. Put simply, Mr. Kidd remains provided with the services Regency offers to all of its resident homeowners and has no FHA claim because of it.

   Plaintiff's attempt to use *Bloch v. Frischolz* to counter this conclusion is unavailing. In *Bloch*, devout Jewish residents of a condominium complex sought to place a mezuzah on their door frame that was visible from the exterior hallway. 587 F.3d 771, 772-73 (7th Cir. 2009). A "mezuzah is a central aspect of the Jewish religious tradition—many Jews believe they are commanded by God to affix mezuzot on the exterior doorposts of their dwelling[.]" *Id.* at 772. Indeed, Jewish law requires it to be displayed as such and "observant Jews could not live in a place that prohibited" the practice. *Id.* at 773. When the Condo Association enacted a rule prohibiting all items outside of unit doors, the Association began to frequently remove the Blochs' mezuzah. *Id.* at 773. In fact, the Blochs' mezuzah was removed while other items in the exterior hallway remained. *Id.* at 774.

   The Blochs' situation was one of complete deprivation of an ability to observe Jewish law that neared the level of constructive eviction.[4] As well, it is distinguishable from the instant case on the fact that the Condo Association's removal of mezuzot while not removing other violative items suggests targeted, intentional discrimination through application of the policy. By consistently removing the Blochs' mezuzah, the Condo Association was effectively depriving the

---

[4] It must also be noted that the Seventh Circuit did not actually find that an FHA violation occurred in *Bloch*. The Circuit reversed summary judgment in favor of the Condo Association and found "[a] trier of fact could conclude that the Association's reinterpretation of the Hallway Rule and clearing of all objects from doorposts was intended to target the only group of residents for which the prohibited practice was religiously required." *Id.* at 787.

6

Blochs of their ability to observe Jewish law. In other words, the Blochs were forced to choose: their condo or their religion.

Mr. Kidd faces no such conundrum. He is able to practice his religion in his home and could even observe his religion in the Clubhouse individually, say by engaging in prayer before meals at the Clubhouse's Grill. The Association's policy does not force Mr. Kidd to violate laws of his religion or constructively evict him from his home. Rather, it inconveniences the Club—not him personally. As such, Mr. Kidd has not been completely deprived of the incidents of ownership required to support a claim under the FHA. And because Plaintiff's claim under § 3604 cannot proceed, Plaintiff's claim under § 3617 must also be dismissed.[5]

## IV. The Complaint does not adequately state a cause of action against CMC.

Even if the Court finds it proper to let Plaintiff's claims proceed, Defendant CMC should be dismissed from the case.[6] Plaintiff's allegations of harm are caused by the enactment of the policy. The policy was solely a product of the Association Defendant, passed pursuant to the Association's Declaration and Bylaws, and the Association's President notified the community of the policy's enactment. ECF No. 1: Compl. at ¶¶ 37-38. Plaintiff's sole allegation against CMC is that its representative sent an email to Plaintiff informing him that, due to the Association's policy, all clubhouse reservations for RCF had been canceled. Compl. at ¶ 40. By including CMC in this suit, Plaintiff is simply attacking the messenger. The allegation does not

---

[5] Plaintiff does not dispute that a violation of § 3617 in this case requires an underlying violation of § 3604(b). *See* Resp. at 10. Accordingly, Count II of Plaintiff's Complaint is dependent on the plausibility of Count I.

[6] Plaintiff attempts to diminish this argument by claiming that Defendants have waived the argument by failing to reference case law. Plaintiff's reliance on *Grayson O Co. v. Agadir Int'l LLC* is misplaced. This matter involved the failure to raise an argument in an opening appellate brief. 856 F.3d 307, 316 (4th Cir. 2017). Specifically, Grayson O included a singular sentence in its opening brief stating that "there are genuine issues of material fact as to the commercial strength of its mark." *Id*. Then, in its reply, Grayson O attempted to elaborate on the argument in its reply but did so by raising points that were nowhere to be found in the opening brief. *Id.* That is not what has occurred here, and the Defendants argument should be given full consideration.

suggest that CMC or its representative discriminated, threatened, or intimidated him; rather, the allegation is simply that CMC communicated the allegedly discriminatory policy and its effects to Plaintiff. Accordingly, CMC carries no more liability in this case than the United States Postal Service would if Plaintiff received the same notification via mail.

To be clear, the Defendants are not asserting that a property management company is protected from liability under the FHA. Rather, the argument is that Plaintiff has not presented <u>any factual basis</u> for the Court to infer that CMC has engaged in conduct which violates the FHA or the VFHL. *See, e.g.*, *United States v. Williams*, Civil Action No. 1:12-cv-551, 2013 U.S. Dist. LEXIS 21164, at *13 (E.D. Va. Feb. 14, 2013) (holding property manager can be liable for <u>its own unlawful conduct</u>). Unlike in *Williams*, the property manager here (CMC) has not been alleged to have engaged in any unlawful conduct. At most, it is alleged that CMC sent an email. Accordingly, the claims against it are not supported.

## CONCLUSION

Defendants respectfully request this Court enter an Order (i) granting their Motion to Dismiss the Complaint, (ii) dismissing all counts of the Complaint with prejudice, and (iii) for such other relief as this Court deems proper.

Dated: May 19, 2025

Respectfully submitted,
*By Counsel*

<u>/s/ Alison Duffy</u>
Alison C. Duffy (VSB #90113)
Brooks R. Cain (VSB #99968)
O'Hagan Meyer, PLLC
2560 Huntington Ave, Suite 204
Alexandria, VA  22303
(703) 775-8606
aduffy@ohaganmeyer.com
bcain@ohaganmeyer.com
*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on May 19th, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to all counsel of record.

*/s/ Alison Duffy*
Alison C. Duffy (VSB #90113)
